## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Dkt. No. 0102 1:12-CR-0061-1-PB |
| | ) | |
| **TOSATTI PADMORE** | ) | |

### DEFENDANT TOSATTI PADMORE'S SENTENCING MEMORANDUM

Pursuant to Fed. R. Cr. P. 32 and Loc. R. Cr. P. 32.1, the defendant, through counsel, submits this memorandum in support of the Court's acceptance of the binding sentencing stipulation in the plea agreement for a sentence of imprisonment of between 36 and 56 months for Counts One through Five.[1] In the re-revised presentence report (PSR), the probation officer has recommended an advisory guideline range (AGR) of 37 to 46 months. The defendant agrees with the conclusion of the probation officer and respectfully requests that the Court impose a sentence at the low end of this range, *i.e.,* 37 months. The defendant believes that when the Court fully considers the impact of the defendant's serious mental health history and substance abuse history on his life, the Court will conclude that such a sentence – paired, as it must be, with a 60-month consecutive term of imprisonment – will together constitute a just disposition of this case. Such a sentence, especially if properly focused on the mental health and substance abuse treatment needs of the defendant, will meet all of the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). Accordingly, the defendant seeks a sentence of imprisonment of 37 months for Counts One through Five, followed by a consecutive sentence of 60 months for Count Six, resulting in a total sentence of imprisonment of 97 months. A term of five years' supervised release, which should include special conditions for mental health and substance abuse treatment,

---

[1] A sentence of 60 months' imprisonment must be ordered for Count Six which must run consecutively to whatever sentence the Court imposes for Counts One through Five.

must be imposed. The defendant also requests that the Court recommend to the Bureau of Prisons (BOP) that the defendant be accorded psychiatric treatment while in custody and that the defendant be placed in the Residential Drug Abuse Program (RDAP).

**History and Characteristics of the Defendant**

The PSR recounts well the defendant's family and personal history. The defendant did have the benefit of growing up in a largely stable two-parent household with his siblings. The defendant's father was gainfully employed throughout the defendant's youth. An automobile accident during the 1980s led to significant physical and mental health problems for his mother, serious enough that she collected Social Security Disability benefits from that ime until her recent death. There were no issues of abuse, neglect, or familial drug abuse. The defendant even described the family household as happy and loving. (See PSR, ¶¶ 55-57.)

The foregoing notwithstanding, the defendant's mother also experienced depressive episodes leading to "nervous breakdowns" during the defendant's upbringing, a condition which evidently runs in the defendant's family. (PSR, ¶57.) The defendant himself began experiencing significant emotional and mental health issues at age 16 when he was diagnosed with Bi-polar Disorder. A commitment to New Hampshire Hospital that year resulted in the aforementioned diagnosis as well as Psychosis NOS (not otherwise specified). The defendant acted bizarrely during his commitment there and reported auditory hallucinations, continuing paranoia, and visual hallucinations. He did subsequently engage in outpatient therapy for a period of time at the Cyprus Center in Manchester. In 2011, the defendant began collecting SSI benefits on the basis of "mental retardation and (*sic*) effective mood disorder." The fact that the defendant is currently prescribed Remeron, an antidepressant, and Depakote for Bi-polar Disorder suggests that these conditions continue to exist for the defendant. (See PSR, ¶60.)

Not surprisingly, the defendant also developed a substance abuse problem commencing at age 16. That problem over time has involved the abuse of alcohol, marijuana, and prescription painkillers. The defendant has engaged in substance abuse therapy, most notably at the Farnum Center and Serenity Place in Manchester. (See PSR, ¶61.) Clearly, his involvement in the instant offense was directly related to this history.

When one reads the defendant's adult criminal history (PSR, ¶¶ 39 – 54), it is abundantly clear that the defendant's mental health disorders and/or substance abuse issues played a role in every one of the offenses. It is for this reason that, for both the protection of society and the defendant's own ultimate well-being, the Court's sentence should have as a centerpiece both mental health and substance abuse treatment both while the defendant is imprisoned and when he is under supervision in the community.

### Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes

The Court's sentence must address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). An analysis of this case in light of those purposes follows.

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The offense before the Court is quite serious and requires a significant term of imprisonment to address each of these subfactors. The defendant submits that a total term of imprisonment of 97 months, as determined under the Guidelines, is both significant and "sufficient but not greater than necessary" to meet this overall purpose.

*(B) To afford adequate deterrence to criminal conduct.*

In terms of general deterrence, a sentence of 97 months should be effective, especially when one remembers that, even with the awarding of all available good time, a Federal prisoner must serve approximately 87.5% of the pronounced sentence. In terms of

3

individual deterrence, such a sentence considerably exceeds that of the defendant's two prior felony convictions and should therefore act as a deterrent to his committing similar crimes in the future.

*(C) To protect the public from further crimes of the defendant.*

The defendant will be separated from the general public during his significant term of imprisonment. He will also be supervised closely in the community by the U.S. Probation Office for five years upon his release from imprisonment. If 97 months' imprisonment is imposed, that amounts to more than 13 years of criminal justice control during which the public will be reasonably protected from further crimes of the defendant.

*(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

In light of the defendant's history of significant mental health and substance abuse problems, it is crucial that he be accorded treatment in both areas while incarcerated and while under supervision. Such a regimen, if successful, will not only greatly benefit the defendant but also serve to protect the public from further crimes of the defendant for the longer term.

**Recommendation**

The defendant urges the Court to consider and impose a sentence at the low end of the AGR, *i.e.,* 37 months, plus the mandatory consecutive sentence of 60 months, for a combined total sentence of 97 months' imprisonment. No departure or variance is necessary. The defendant also urges the Court to recommend to BOP and order the U.S. Probation Office to provide the defendant with needed mental health and substance abuse treatment. Such a sentence would meet the requirement that the Court impose a sentence "sufficient but not greater

4

than necessary" to meet all of the statutory purposes of sentencing, and it would give the defendant hope for the future by providing him an opportunity to address the problems which have plagued him since age 16.

Accordingly, the defendant respectfully requests that the Court accept the binding stipulation in the plea agreement and impose the following sentence:

> 37 months' imprisonment for each of Counts One through Five, ordered to run concurrently, followed by 60 months' imprisonment ordered to run consecutively, to achieve a combined overall sentence of 97 months' imprisonment;

> Judicial recommendations to BOP that the defendant be accorded psychiatric treatment and participate in the 500-hour RDAP while in custody and that a facility as close as possible to the defendant's home be designated for service of this sentence;

> Five years' supervised release for Count VI and three years' supervised release for each of Counts One through Five, all ordered to run concurrently;

> Special conditions of supervised release for mental health treatment and substance abuse aftercare;

> Waiver of fine due to inability to pay same; and,

> A special assessment of $600.

                                                             Respectfully submitted,
Tosatti Padmore
By His Attorney,

DATE:      June 13, 2013                /S/Paul J. Garrity
                                                            Paul J. Garrity
                                                            Federal ID# 905
                                                            14 Londonderry Road
                                                            Londonderry, NH 03053
                                                            603-434-4106
                                                            garritylaw@myfairpoint.com

## CERTIFICATE OF SERVICE

I, Paul J. Garrity, hereby certify that on this 13th day of June, 2013, a copy of the enclosed Defendant's Sentencing Memorandum has be e-filed to the U.S. Attorney's Office and all parties on record and mailed, postage prepaid to Tosatti Padmore.

/S/Paul J. Garrity
Paul J. Garrity